**In re Ronald E. FONKE, Debtor.**

No. 03–41389.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Feb. 1, 2005.

200

C. Mark Murrah, Stumpf Craddock et al., Peter Johnson, Law Offices of Peter Johnson, Houston, TX, for Debtor.

Gretchen Gauer McCord, Houston, TX, for trustee.

### *MEMORANDUM OPINION*

MARVIN ISGUR, Bankruptcy Judge.

The Court finds that the deadline to object to exemptions does not recommence when a case under chapter 13 is converted to a case under chapter 7.

### Background

The facts of this case are undisputed. Ronald Fonke (the "Debtor") filed a voluntary petition under chapter 13 of the Bankruptcy Code on August 7, 2003. The Debtor properly filed his list of exempt property. Neither the chapter 13 trustee nor any creditor objected. This case was converted to chapter 7 on June 10, 2004, [Docket no. 79][1] and a chapter 7 trustee (the "Trustee") was appointed on June 15, 2004.

Upon conversion, the United States Trustee issued a new Notice of Bankruptcy and scheduled a new meeting of creditors pursuant to 11 U.S.C. § 341(a). This second § 341 meeting concluded on August 20, 2004. The Trustee filed an objection to the Debtor's exemptions on September 17, 2004. [Docket no. 103]. The Debtor objects to the Trustee's exemption objection as untimely under Rule 4003(b). [Docket no. 115]. The Trustee contends that the Rule 4003(b) deadline recommences upon conversion from chapter 13 to chapter 7. This is the central question before the Court.

### Analysis

A substantial number of courts have held that the Rule 4003(b) deadline does not recommence upon the conversion of a chapter 13 case to chapter 7.[2] This view has been referred to as the majority position. *See In re Campbell*, 313 B.R. 313, 318 (10th Cir. BAP 2004). Another line of jurisprudence holds that the deadline does recommence upon conversion. While termed the minority position, a large number of courts have nonetheless adopted this analysis.[3]

---

**1.** The Court issued a Memorandum Opinion in support of the order of conversion. *In re Fonke*, 310 B.R. 809 (Bankr.S.D.Tex.2004).

**2.** *See In re Smith*, 235 F.3d 472 (9th Cir.2000) (conversion of case under chapter 11 to a case under chapter 7); *In re Bell*, 225 F.3d 203 (2nd Cir.2000) (conversion of chapter 11 case to a case under chapter 7); *In re Ferretti*, 230 B.R. 883 (Bankr.S.D.Fla.1999), *subsequently aff'd*, 268 F.3d 1065 (11th Cir.2001) (conversion of chapter 13 case to chapter 7); *In re Rogers*, 278 B.R. 201 (Bankr.D.Nev. 2002) (conversion of chapter 13 to chapter 7); *In re Page*, 240 B.R. 548 (Bankr.W.D.Mich. 1999) (conversion of chapter 13 to chapter 11); and *In re Brown*, 178 B.R. 722 (Bankr. W.D.Tenn.1995) (conversion of chapter 11 to chapter 7).

**3.** *In re Alexander*, 236 F.3d 431 (8th Cir.2001) (conversion of chapter 13 case to a case under chapter 7); *In re Campbell*, 313 B.R. 313 (10th Cir. BAP 2004) (conversion of chapter 13 case to a case under chapter 7); *In re Koss*, 319 B.R. 317 (Bankr.D.Mass.2005)

(conversion of chapter 11 case to a case under chapter 7); *In re Hopkins*, 317 B.R. 726, (Bankr.E.D.Mich.2004) (conversion of chapter 13 case to a case under chapter 7); *In re Lang*, 276 B.R. 716 (Bankr.S.D.Fla.2002) (conversion of chapter 11 case to a case under chapter 7); *In re Fish*, 261 B.R. 754 (Bankr.M.D.Fla.2001) (conversion of chapter 13 to a case under chapter 7); *In re Mims*, 249 B.R. 378 (Bankr.D.N.J.2000) (re-conversion of chapter 13 case to chapter 7); *In re Wolf*, 244 B.R. 754 (Bankr.E.D.Mich.2000) (conversion of chapter 11 case to a case under chapter 7); *In re Havanec*, 175 B.R. 920 (Bankr.N.D.Ohio 1994) (conversion of a case under chapter 11 to a case under chapter 7); *In re Weissman*, 173 B.R. 235 (M.D.Fl.1994) (affirming decision of bankruptcy court permitting chapter 7 trustee to object to exemptions following conversion of chapter 13 to chapter 7); *In re de Kleinman*, 172 B.R. 764 (Bankr.S.D.N.Y.1994) (conversion of case under chapter 11 to chapter 7); *In re Bergen*, 163 B.R. 377 (Bankr.M.D.Fla.1994) (conversion of case under chapter 11 to case under

There is no controlling authority in this Circuit. The result in this opinion is consistent with the results in opinions issued by the Second and Ninth Circuits[4] and inconsistent with an Eighth Circuit opinion. *See In re Smith*, 235 F.3d 472 (9th Cir.2000); *In re Bell*, 225 F.3d 203 (2nd Cir.2000); *In re Alexander*, 236 F.3d 431 (8th Cir.2001).

The principal analytical distinction between the positions are the respective courts' interpretations of Bankruptcy Rules 1019(2) and 4003(b). Rule 1019(2) states:

> When a chapter 11, chapter 12, or chapter 13 case has been converted or reconverted to a chapter 7 case: ... [a] new time period for filing claims, a complaint objecting to discharge, or a complaint to obtain a determination of dischargeability of any debt shall commence pursuant to Rules 3002, 4004, or 4007, provided that a new time period shall not commence if a chapter 7 case had been converted to a chapter 11, 12, or 13 case and thereafter reconverted to a chapter 7 case and the time for filing claims, a complaint objecting to discharge, or a complaint to obtain a determination of the dischargeability of any debt, or any extension thereof, expired in the original chapter 7 case.

Courts adopting the majority position have focused on Rule 1019(2) and employed the principle of statutory construction known as *"expressio unius est exclusio alteriu."* *In re Hopkins*, 317 B.R. 726, 731 (Bankr.E.D.Mich.2004). This principle states that the enumeration of one or more exceptions to a rule implies an intention to exclude any other exceptions. *Id.* Employing this rule of statutory construction, majority position courts rely on the omission of the Rule 4003(b) deadline—from the conversion deadlines created in Rule 1019(2)—as evidence of an intent not to recommence the Rule 4003(b) deadline. Thus, the majority courts construe Rule 1019(2) to mean that there is no new filing period for objections to exemptions. *See In re Rogers*, 278 B.R. 201, 203 (Bankr. D.Nev.2002).

Courts adopting the minority position discount this omission and claim that the plain language of Rule 4003(b) controls this issue. Rule 4003(b) states in relevant part:

> A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.

Courts adopting the minority position hold that the plain language of Rule 4003(b) is unambiguous when read with §§ 341(a)[5] and 348(a).[6] *See In re Campbell*, 313 B.R.

---

chapter 7); *In re Jenkins*, 162 B.R. 579 (Bankr.M.D.Fla.1993) (conversion of case under chapter 13 to chapter 7); and *In re Leydet*, 150 B.R. 641 (Bankr.E.D.Va.1993) (conversion of chapter 11 case to case under chapter 7).

**4.** This opinion is also consistent with the Eleventh Circuit's unpublished affirmation. *In re Ferretti*, 230 B.R. 883 (Bankr.S.D.Fla. 1999), *subsequently aff'd*, 268 F.3d 1065 (11th Cir.2001).

**5.** Section 341(a) states, "[w]ithin a reasonable time after the order for relief in a case under

this title, the United States trustee shall convene and preside at a meeting of creditors."

**6.** Section 348(a) states "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."

at 318. This reasoning is aptly displayed in *Campbell:*

> [U]nder § 348(a), the conversion of a Chapter 13 to Chapter 7 "constitutes an order for relief under the chapter to which the case is converted, but ... does not effect a change in the date of the ... order for relief." Because the conversion of a Chapter 13 case to Chapter 7 constitutes an order for relief, a new meeting of creditors must be called in the converted Chapter 7 case pursuant to § 341(a) and Federal Rule of Bankruptcy Procedure 2003(a). The objection period set forth in Bankruptcy Rule 4003(b) runs within thirty days after the "meeting of creditors held under § 341(a) is concluded...." *Given that there is nothing in Bankruptcy Rule 4003(b) limiting the "meeting of creditors" to the initial meeting of creditors in the Chapter 13 case, courts adopting the minority view hold that parties in interest have thirty days from the conclusion of the meeting of creditors called in the converted Chapter 7 case to object to a debtor's claimed exemption.*

*Id.* at 318 (emphasis added). Thus, the minority courts claim that the plain language supports their view due to an absence of language limiting the Rule 4003(b) deadline to the *initial* meeting of creditors.

■ Unlike the majority and minority courts, this Court finds both Rule 1019(2) and Rule 4003(b) inherently ambiguous regarding this issue. First, the Court finds Rule 4003(b)—the basis for the minority position—ambiguous due to a lack of precision in the language regarding the creditors' meeting(s). Specifically, when the Court reads Rule 4003(b) in conjunction with §§ 348 and 341, the Court is unable to determine whether, in Rule 4003(b), *"the"* meeting of creditors refers to the *initial* meeting of creditors or *every* meeting of creditors held pursuant to § 341(a). In fact, Rule 2003—which implements § 314(a)—uses the articles "the" and "a" interchangeably.[7] As it is undisputed that both creditors' meetings are held pursuant to § 341(a), Rule 4003(b) may or may not refer to both of them.[8] Further, this

---

7. Section 341(a) states, "[w]ithin a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at *a meeting* of creditors." However, Rule 2003(a) states: "[i]n a chapter 13 individual's debt adjustment case, the United States trustee shall call *a meeting* of creditors to be held no fewer than 20 and no more than 50 days after the order for relief. If there is an appeal from or a motion to vacate the order for relief, or if there is a motion to dismiss the case, the United States trustee may set a later date for *the meeting. The meeting* may be held at a regular place for holding court or at any other place designated by the United States trustee within the district convenient for the parties in interest. If the United States trustee designates a place for *the meeting* which is not regularly staffed by the United States trustee or an assistant who may preside at *the meeting, the meeting* may be held not more than 60 days after the order for relief." Rule 2003(b) further states, "[t]he United States trustee shall preside at

*the meeting* of creditors. The business of *the meeting* shall include the examination of the debtor under oath and, in a chapter 7 liquidation case, may include the election of a creditors' committee and, if the case is not under subchapter V of chapter 7, the election of a trustee."

8. The Court notes that the *Bell* opinion attempts to distinguish the meetings through a detailed reading of Rule 2003. *See In re Bell,* 225 F.3d at 207 (stating, "[b]ecause the Rules require not only that objections be filed within 30 days of the conclusion of the meeting of creditors, *see* Rule 4003(b); 11 U.S.C. § 522(*l*), but also that the meeting of creditors itself be convened within 40 days of the order for relief, *see* 11 U.S.C. § 341; Rule 4003(b), Rule 2003(a), and because conversion does not change the date of the order for relief, *see* 11 U.S.C. § 348(a), we conclude that conversion does not reset the limitations period for filing objections to a debtor's claimed exemptions").

Court is not compelled by Rule 4003(b)'s failure to explicitly limit itself to the initial meeting of creditors. The Court finds it plausible that the drafters either did not consider this issue, or considered Rule 1019(2) as governing, thus making explicit mention of the 4003(b) deadline needlessly superfluous. Accordingly, this Court concludes that Rule 4003(b) is ambiguous as to whether the deadline recommences.

The Court likewise finds the majority position analysis of Rule 1019(2) unpersuasive. As discussed above, the majority position courts rely on the exclusion of the Rule 4003(b) deadline from Rule 1019 as their basis for not recommencing the deadline to object. The Court declines to adopt the majority analysis of this issue for the same reasons the Court declines to follow the minority analysis. Specifically, Rule 1019(2) may not need to mention Rule 4003(b), because Rule 4003(b) arguably states that the deadline recommences. As such, this Court finds both rules facially ambiguous as to the present issue.

The minority courts also base their decisions on policy considerations. Specifically, they find that it would be highly inequitable to deny the chapter 7 trustee the opportunity to pursue valid objections in his effort to liquidate and administer the estate. *See Campbell,* 313 B.R. at 322. These courts reason that the purpose of exemptions is different in a chapter 13 case than in a chapter 7 case. Specifically, these courts claim that the purpose of exemptions in chapter 7 is "allow the debtor to retain possession of the property or to obtain a share of sale proceeds when the property is liquidated," while in chapter 13, the purpose of exemptions is to determine whether the plan meets the best interests of creditors test under § 1325(a)(4). *Id.* Thus, these courts reasons that in some instances, the value of the exemption would not be contested in a

chapter 13 because it would not produce a greater return than in a chapter 7. Despite these arguments, the Court will not base its decision on policy considerations where such a decision would result in a violation of the Code.

■ Based on the above mentioned statutory conflicts and ambiguities, this Court is obligated to return to the fundamentals of statutory interpretation, and begins its analysis with the statutes in question. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). When a debtor files bankruptcy, all of the debtor's property becomes property of the estate pursuant to § 541(a)(1) and (a)(2). The estate even includes the property that the debtor intends to claim as exempt under § 522. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 641, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). As explained below, the debtor's property may then be removed from the estate *via* the § 522 exemption procedure.

■ Under § 522, a debtor may exempt property by filing a list of property that the debtor claims is exempt under § 522(b). At this time, the property is still considered property of the estate. The property may then only become exempt if the requirements of § 522(*l*) are met. Section 522(*l*) states, "[t]he debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section ... Unless a party in interest objects, the property claimed as exempt on such list is exempt". Therefore, the property's exempt status is conditioned on a lack of objection by a party in interest. While § 522(*l*) conditions exemption on a lack of objection, the section sets no deadline for when a party must object. This deadline is instead supplied by Rule 4003(b).

Rule 4003(b) states in relevant part:

A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.

FED. R. BANKR.P. 4003(b). In *Taylor*, the Supreme Court held, that "Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors may not object after 30 days 'unless, within such period, further time is granted by the court.' The Bankruptcy Court did not extend the 30–day period. Section 522(*l*) therefore has made the property exempt." *Taylor*, 503 U.S. at 642, 112 S.Ct. 1644.

■■■■ When the property has been made exempt, the property exits the estate and vests in the debtor. As explained in the *Bell* opinion:

> It is well-settled law that the effect of this self-executing exemption is to remove property from the estate and to vest it in the debtor. *See Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (when property becomes exempt, it is "withdrawn from the estate (and hence from the creditors) for the benefit of the debtor"); *Redfield v. Peat, Marwick, Mitchell & Co. (In re Robertson)*, 105 B.R. 440, 446 (Bankr.N.D.Ill.1989) ("The effect of the automatic allowance of a claim of exemption due to expiration of the 30–day period is, under well-settled case law, to revest the property in the Debtor and end its status as property of the estate") (internal quotation marks and citation omitted); *accord In re Halbert*, 146 B.R. [185] at 188–89 [(Bankr.W.D.Tex.1992)] (collecting cases); *In re Brown*, 178 B.R. at 726–27 (collecting cases); *see also*

*Turner v. Ermiger (In re Turner)*, 724 F.2d 338, 341 (2d Cir.1983) (Friendly, J.) (where a debtor has already "reclaimed" exempted property from the estate, a dispute over such property is not sufficiently "related to" the bankruptcy case to sustain federal jurisdiction under the identical predecessor to 28 U.S.C. § 1334(b)). *Cf.* 11 U.S.C. § 1123(c) (in Chapter 11, if the debtor does not propose a reorganization plan and the court approves a plan proposed by a creditor, such plan may not provide for the "use, sale, or lease" of exempted property unless the debtor consents). Quite simply, property that has been exempted belongs to the debtor.

*In re Bell*, 225 F.3d at 215–16. Further, when the property vests in the debtor, § 522(c) protects the property from liability during the course of the case. This section states:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case....

11 U.S.C. § 522(c). Thus, § 522(c) "essentially 'immunizes' exempt property against any liability for prepetition debts." *In re Reed*, 184 B.R. 733, 738 (Bankr.W.D.Tex. 1995) (citations omitted).

■■■■ In this case, the Debtor properly filed for exemptions without objection. Accordingly, pursuant to § 522(*l*), the property is deemed exempt. Because of its exempt, the property has left the estate and vested in the Debtor. Further, pursuant to § 522(c), the property is not liable for any prepetition debts during the course of the case.[9] Thus, for any new objection

---

**9.** The Court notes that while § 522(c) does    not apply if the case is dismissed, the section

period to have meaning, the Code must first provide a manner in which this exempted property can be recaptured by the estate upon conversion.[10] Section 348(f) appears to address this matter, stating:

(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and

(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f).

Under a plain reading of § 348(f)(1), the property of the estate would consist of all of the debtor's property as of the filing of the petition. Therefore, because there was no exempt property on the petition date, § 348(f) appears to restore or recapture subsequently exempted property, and thus bring it back into the estate. This recapture thus makes it possible for a new objection period to have an effect. The difficulty with this analysis, however, is that such a reading of § 348(f) appears to be in direct contradiction with § 522(c). Based on a plain reading of § 522(c), the property that was previously exempted in the case cannot be subject to liability for prepetition debts unless the case is dismissed. Therefore, reading §§ 348(f)(1) and 522(c) in harmony would require property to be brought back into the estate and yet not be subject to liability for prepetition debts. Such a result borders on the absurd because any recapture of the exempt property would have no effect. This

---

is silent on the effect of conversion. As displayed elsewhere in the Code—particularly § 1306(2)—Congress has included "conversion or dismissal" in other sections.

**10.** The *Campbell* opinion addresses this issue by comparing the recapture of exempt property that has vested in the debtor to the recapture of property vested in the debtor pursuant to § 1327(b). *See In re Campbell,* 313 B.R. at 320–21. The opinion states:

We agree with courts adopting the majority view that property exempt under § 522(*l*) revests in the debtor. We disagree, however, with the opinion of some of those courts that revesting precludes the recommencement of the deadline in Bankruptcy Rule 4003(b) upon conversion of the case from Chapter 13 to Chapter 7. Property of the estate also revests in the debtor upon the confirmation of a Chapter 13 plan under § 1327(b). Such revested property, being property that was property of the estate on

the date that a debtor files a Chapter 13 petition, is property of the Chapter 7 estate upon conversion under § 348(f) if it is still in the debtor's possession. To allow property revested under § 522(*l*) to be excluded from the scope of § 348(f) would require that property revested under § 1327(b) to likewise be excluded. This would have the effect of rendering § 348(f) meaningless in Chapter 13 cases converted after the confirmation of a plan.

*Id.* (footnotes omitted). As explained below, the effect of recapturing *exempt* property is distinguishable from recapturing property that vested pursuant to § 1327. Specifically, there is no independent statutory directive akin to § 522(c) that protects property that has vested pursuant to § 1327(b). Accordingly, there is no conflict between § 348's recapture provisions as applied to property that has vested in the debtor under § 1327(b).

cannot be a proper interpretation. *See Atchison v. Collins*, 288 F.3d 177, 181 (5th Cir.2002) (citing *United States v. Orleans Parish School Board*, 244 F.3d 486, 493 (5th Cir.2001)) ("the common mandate of statutory construction [is] to avoid absurd results").

■ Thus, in absence of the ability to harmonize the conflicting statutes, the Court must determine whether § 522 or § 348 controls. When interpreting conflicting statutes, the more specific statute prevails over a more general statute. *Edmond v. United States.*, 520 U.S. 651, 658, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997) (stating "[o]rdinarily, where a specific provision conflicts with a general one, the specific governs"); *Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961) (stating that "a specific statute controls over a general one without regard to priority of enactment"); *In re Luongo*, 259 F.3d 323 (5th Cir.2001).

■ Section 348(f) addresses what is considered property of the estate upon conversion. As such, it appears to address the present issue. Section 522(c), however, specifically deals with the liability of property exempted under § 522. Accordingly, in determining the issue of liability of exempt property for prepetition debts, § 522(c) is the more specific statute. Therefore, § 522(c) trumps § 348 as to whether previously exempted property may be liable for prepetition debts by being recaptured by the estate.

■ Further, in determining which statute controls, the Court is instructed by the legislative history of the competing statutes. *See C.I.R. v. Tufts*, 461 U.S. 300, 316, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983) (stating, "[t]he apparent conflict of these subsections renders the facial meaning of the statute ambiguous, and therefore we must look to the statute's structure and

legislative history"). The legislative history of § 522(c) indicates that "[t]he clear intent of Congress in section 522(c) was to preserve property exempted in bankruptcy for satisfaction of tax and support obligations and, if the debtor has no such debts, for the debtor's fresh start." *In re Farr* 278 B.R. 171 (9th Cir. BAP 2002) (citing *In re Farr II*, 266 B.R. 197, 198 (Bankr.N.D.Cal.2001)); *see also In re Whalen–Griffin*, 206 B.R. 277 (Bankr. D.Mass.1997) (quoting H.R. REP. No. 595, 95th Cong., 1st Sess. 361 (1977) and S. REP. No. 989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* WILLIAM L. NORTON, JR., NORTON BANKRUPTCY CODE PAMPHLET, p. 494 (1996–97 ed.) ("[w]ith respect to § 522(c) specifically, the pertinent legislative history provides that 'Subsection (c) insulates exempt property from prepetition claims, except tax and alimony, maintenance, or support claims that are excepted from discharge. The bankruptcy discharge will not prevent enforcement of valid liens' ")). Accordingly, it is evident from this legislative history, that § 522(c) was intended to protect exempt property from prepetition claims that were not specifically enumerated by the section.

The legislative history of § 348, on the other hand, indicates that Congress intended § 348(f) to settle a specific issue that had developed into a split amongst the circuits. Specifically, § 348 was enacted to resolve the issue of whether property that a debtor acquires after he or she files a petition for relief under chapter 13 petition is property of the estate in a converted case. *See In re Stamm*, 222 F.3d 216, 217–18 (5th Cir.2000); *see also* 140 CONG. REC. H10752–01, H10770–10771 (1994) (stating that "[t]his amendment would clarify the Code to resolve a split in the ... law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7" and that "[t]his amendment overrules the holding in

cases such as *Matter of Lybrook* and adopts the reasoning of *In re Bobroff*") (citations omitted). Based on this legislative history, it is evident that Congress did not intend § 348 to bring exempted property back into the estate upon conversion, but rather to resolve the circuit split regarding postpetition after acquired property in a converted case. Consequently, the legislative history of these statutes demonstrate that § 522(c) is the more applicable statute.

Further, any question of whether Congress intended to bring exempted property back into the estate is silenced by the structure of § 348(f) as a whole. Specifically, in reading § 348(f)(1) in comparison with § 348(f)(2), it is evident that Congress did not intend to recapture exempt property. Section 348(f)(2) states: "[i]f the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in *bad faith,* the property in the converted case shall consist of the property of the estate *as of the date of conversion.*" 11 U.S.C. § 348(f)(2) (emphasis added). Based on the plain language of § 348(f)(2), a debtor who converts in bad faith is punished by enlarging the property of the estate to include the debtor's postpetition after acquired property. However, because the statute states that property of the estate includes the property as of the time of conversion, and because the exemptions would not be included as property of the estate, the debtor who converted in bad faith would not be subject to

having his exemptions brought back into the estate for a second objection to exemptions. Thus, if § 348(f)(1) were intended to bring exempt property back into the estate for the good faith conversion, why then would § 348(f)(2) protect the debtor who engaged in a bad faith conversion? Such an interpretation leads to an absurd result that this Court will not enforce. *See Atchison,* at 181. Therefore, the Court finds that the structure of § 348(f) evidences a lack of Congressional intent to recapture exempt property. Accordingly, based on the specificity of § 522(c), legislative history of the competing statutes, and the inconsistent structure of § 348(f), the Court concludes that § 522(c) controls over § 348(f).[11]

Section 522(c) creates a substantive right for the debtor by eliminating liability of exempt property for prepetition debts. Therefore, if Rule 4003(b) were interpreted to create a right to object to previously exempted property, it would modify this substantive right by subjecting the protected property to prepetition liability. Such an effect is prohibited because it would result in a rule abridging a substantive right provided by the Code in violation of 28 U.S.C. § 2075.[12] *See In re Hill,* 811 F.2d 484, 486 (9th Cir.1987). Accordingly, because the statutory provisions appearing to recommence the objection deadline are ambiguous, and because any new deadline would either violate a substantive right granted under the Code, the Court finds

---

**11.** The Court further notes that a collateral consequence of allowing property of the estate to be recaptured upon conversion would be to create a system of quasi-exempt property, because property would never be fully exempt until a case was either closed or converted. Further, because a case can be reopened, there would truly be no finality to the question of exemptions unless the property is deemed non-exempt and sold by the chapter 7 trustee.

**12.** Section 2075 of Title 28 states, "[t]he Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right."

that the deadline to object to exemptions does not recommence upon the conversion of a case from chapter 7 to chapter 13.

Consequently, the Trustee's Objection to Debtor's Exemption is denied as untimely.